## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:                    )     Bankruptcy Case No. 15 B 05304

                               )

SELINA L. FRAZIER,        )     Chapter 7

                               )

             Debtor.      )     Honorable Janet S. Baer

                               )

                               )

MWRD EMPLOYEES' CREDIT UNION,  )     Adversary Case No. 15 A 00812

                               )

             Plaintiff,     )

                               )

     v.                   )

                               )

SELINA L. FRAZIER,        )

                               )

             Defendant.   )

### MEMORANDUM OPINION

The MWRD Employees' Credit Union (the "Plaintiff") filed an adversary complaint in the bankruptcy case of Selina L. Frazier (the "Debtor"), seeking a determination that a debt owed to the Plaintiff by the Debtor in connection with the Debtor's Chevrolet Impala is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[1]  The Plaintiff also alleged that the Debtor is not entitled to a discharge pursuant to § 727(a)(2).  For the reasons set forth below, the Court finds that the Plaintiff has failed to meet its burden to establish the elements required under either § 523(a)(6) or § 727(a)(2).  As such, the debt at issue will not be excepted from discharge, nor will the Debtor's discharge be denied.

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), and (O).

## BACKGROUND

The pertinent facts are drawn from the complaint, the exhibits attached thereto, the

Court's docket, and the testimony and various exhibits received into evidence at a bench trial that

was held on April 5, 2016.  At that trial, Linda Geers ("Geers"), the president and general

manager of the Plaintiff, and Sheila O'Leary ("O'Leary"), the collections department manager of

Creditors Resource Service ("CRS"), testified for the Plaintiff.[2]  The Debtor appeared pro se and,

despite having failed to file a written answer to the complaint, testified in her own defense.[3]  As

established by the applicable documents and the trial testimony, the facts that are relevant to the

Plaintiff's claims of nondischargeability and denial of discharge can be summarized as follows.

On June 9, 2012, the Debtor, an employee of the Metropolitan Water Reclamation

District, entered into a retail installment contract for the purchase of a 2012 Chevrolet Impala

---

[2] CRS is the organization used by the Plaintiff when assistance is required. (Trial Tr. 23:19-23, 26:2-13.)
In this matter, the Plaintiff needed CRS's expertise in recovering the Debtor's car when it was impounded by the
City of Chicago. (Trial Tr. 26:20-24.)

[3] The Debtor was represented by counsel from The Semrad Law Firm, LLC in her bankruptcy case but
proceeded in a pro se capacity in the adversary.  The Plaintiff filed its complaint on October 30, 2015.  (Adv. No.
15-812, Docket No. 1 (hereafter, "Compl.").)  After the Debtor failed to appear, answer, or otherwise defend the
action, the Plaintiff filed a motion for default judgment on December 16, 2015.  (*Id.*, Docket No. 6 (hereafter, "Mot.
for Default J.").)  The Court set the matter for an evidentiary hearing.  At trial, the Debtor appeared as a result of a
subpoena issued by the Plaintiff and testified that she never received a copy of the complaint.  (Trial Tr. 4:2-5:5.)
Accordingly, the Court took a recess to allow the Debtor to read both the complaint and the motion for default
judgment (Trial Tr. 6:14-7:21), and then the trial went forward.  Because the Court accepts the Debtor's trial
testimony as her answer, the Plaintiff's motion for default judgment is moot.  *See* Fed. R. Civ. P. 55(a), made
applicable to adversary proceedings by Fed. R. Bankr. P. 7055 (explaining that entry of default is required "[w]hen a
party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend").

(the "Vehicle") and granted a security interest in the Vehicle to the lender. (Compl. ¶ 6; Trial Tr. 13:15-16.) Thereafter, the Debtor began to experience significant financial trouble and, as a result, turned to the Plaintiff for help in early 2013. According to Geers' testimony, the Debtor's "very bad" credit history included eleven creditors that needed to be "addressed," and she was paying a "terribly high" rate of interest on the Vehicle. (Trial Tr. 12:10-16.) To alleviate the Debtor's financial difficulties, the Plaintiff helped her consolidate her debts, acquired the retail installment contract from the original lender, and gave the Debtor a car loan, in an amount based on the value of the Vehicle, at a much lower interest rate. (Compl. ¶ 6 & Exs.; Trial Tr. 12:17-14:12.) Additionally, the Plaintiff provided the Debtor with an unsecured signature loan based on her length of employment, as well as a People Helping People loan. (Compl. Exs.; Trial Tr. 14:4-7.)

On January 25, 2014, the Vehicle was impounded by the City of Chicago (the "City") because of unpaid parking tickets. (Trial Ex. A; Trial Tr. 16:3-4, 17:1-3, 26:10-13, 37:14-24, 52:1-53:17.) The Debtor received those tickets for parking violations in connection with both her own Vehicle and a car for which she had co-signed with a friend.[4] (Trial Tr. 37:20-24, 52:1-53:17.) A notice of impoundment dated January 29, 2014 was sent to the Plaintiff by the City. (Trial Ex. A.) According to the notice, failure to claim the Vehicle within twenty-one days of the notice date could "result in the sale or other disposition of the [V]ehicle and its contents . . .." (*Id.*)

---

[4] The Debtor's schedule F indicates that, at the time of filing, she owed $4,000 in parking tickets with respect to her Vehicle. (Bankr. No. 15-5304, Docket Nos. 1 & 56.) The tickets for parking violations in connection with the car for which the Debtor co-signed with her friend totaled $5,000. (*See* Bankr. No. 14-27966, Docket No. 1.) The Debtor testified that she did not include on her schedule F her friend's parking tickets for which the Debtor may have been obligated as a co-signer because she "didn't know [she] c[ould] do that." (Trial Tr. 58:11-16.)

3

Upon learning of the impoundment, the Debtor contacted the Plaintiff for assistance in recovering the Vehicle. (Trial Tr. 16:5-11; *see also* Trial Ex. A.) Before the Plaintiff was able to offer help, however, the Debtor borrowed funds from family members to pay for the outstanding tickets and impound-related fees and retrieved the Vehicle from the City. (Trial Tr. 16:11-14, 37:25-38:1, 41:24-42:8, 43:7-25.)

On December 27, 2014, the Vehicle was impounded by the City a second time, again because the Debtor had accumulated parking tickets that had not been paid. (Trial Ex. B; Trial Tr. 16:17-22, 17:1-3, 42:9-11, 44:1-5, 53:18- 54:6.) A notice of impoundment dated January 6, 2015 was sent to the Plaintiff by the City. (Trial Ex. B.) The notice included the same language as the first one, warning that the Vehicle could be sold or otherwise disposed of if not claimed within twenty-one days. (*Id.*) Once again, the Debtor contacted the Plaintiff for help in getting the Vehicle back from the impound lot. (Trial Tr. 16:21-25, 38:1-3.) This time, the Debtor did not have the funds necessary to recover the Vehicle. (Trial Tr. 17:12-13.) Accordingly, the Plaintiff paid the City for the impound-related fees and outstanding parking violations and then added those amounts, which totaled $2,830, to the Debtor's loans with the Plaintiff. (Trial Exs. B & J; Trial Tr. 17:12-13.)

With her financial difficulties continuing (Trial Tr. 36:1-17), the Debtor filed a voluntary petition for relief under chapter 13 on February 17, 2015 (Bankr. No. 15-5304, Docket No. 1). On her schedule D, she listed the debt owed to the Plaintiff for the Vehicle in the amount of $15,800 and a value for the car of $12,950.[5] (Trial Ex. F; *see also* Trial Tr. 49:20-50:10.) In her

---

[5] The Debtor's schedules identify the Vehicle in error as a "2012 Chevrolet Malibu." According to the exhibits and trial testimony, the Vehicle is a 2012 Chevrolet Impala. (Trial Exs. A, B & D; Trial Tr. 57:22-25.)

4

initial plan, filed on February 18, 2015, the Debtor proposed to pay the Plaintiff directly for the
Vehicle. (Bankr. No. 15-5304, Docket No. 6; *see also* Trial Tr. 36:18-25.)  Pursuant to schedule
I, which was filed with the petition, the monthly payment for the Vehicle was listed as $1,133.17.
(Bankr. No. 15-5304, Docket No. 1.)  On February 26, 2015, shortly after filing for bankruptcy
relief, the Debtor insured the Vehicle with full coverage through Access American Casualty
Company.  (Trial Ex. H; *see also* Trial Tr. 55:15-57:2.)

About two months later, on April 15, 2015, while the Debtor's chapter 13 case was
pending, the City impounded the Vehicle a third time, again because of unpaid parking tickets.
(Trial Ex. C; Trial Tr. 17:19-22, 21:1-3, 28:21-23.)  A notice of impoundment dated April 20,
2015 was sent to the Plaintiff by the City.  (Trial Ex. C.)  Once again, the notice warned that the
Vehicle could be sold or otherwise disposed of if it was not claimed within twenty-one days of
the date of the notice.  (*Id.*)

At trial, the Debtor gave conflicting testimony regarding both the second and third
impoundments.  She initially testified that she did not get the Vehicle back after it was
impounded the second time.  (Trial Tr. 40:5-41:14, 42:15-18, 44:3-24, 48:9-11, 50:20-51:2.)  She
also testified that she did not know that the Vehicle had been impounded a third time.  (Trial Tr.
40:15-24, 44:21-24, 54:7-11.)  Upon further questioning, the Debtor admitted that the Vehicle
had been returned to her after the second impoundment, that the Plaintiff had advanced funds for
the payment of the parking tickets and the costs associated with the return after the second
impoundment, and that she had had possession of the Vehicle until it was impounded for the
third time on April 15, 2015.  (Trial Tr. 71:17-72:14.)

The Debtor did not get the Vehicle back after the third impoundment. (Trial Tr. 72:23-73:13.) According to the testimony, the Vehicle was inoperable at the time, the Plaintiff did not want to advance the funds needed to retrieve the car again, and the Debtor did not have the money needed to either repair and recover the Vehicle or get it towed from the impound lot. (Trial Tr. 29:12-16, 47:4-8, 51:12-15, 73:18-74:5.) Because the Debtor was unable to retrieve the Vehicle, on May 4, 2015, she filed an amended chapter 13 plan which provided for surrender of the car to the Plaintiff in full satisfaction of its claim. (Bankr. No. 15-5304, Docket No. 17; Trial Tr. 29:17:21, 47:2-8, 51:12-15.)

On May 14, 2015, the Plaintiff filed an objection to confirmation of the Debtor's plan.[6] (Bankr. No. 15-5304, Docket No. 22.) In that objection, the Plaintiff sought denial of confirmation, alleging that the plan was not filed in good faith. According to the Plaintiff, surrender of the Vehicle, as provided for in the amended plan, was not possible because the Debtor was not in possession of the car. Rather, the Plaintiff argued, the Debtor had to incur the costs necessary to recover the car from the City in order to surrender it to the Plaintiff.

On June 12, 2015, while the objection was pending, the title to the Vehicle was transferred from the Debtor's name to a tow company in Illinois and then subsequently two more times to other entities; the Vehicle is now titled to a corporation located in Wausau, Wisconsin.

---

[6] On May 14, 2015, the Plaintiff also filed an amended proof of claim in the amount of $26,060.97 for "money loaned" in connection with the Vehicle and the other loans advanced by the Plaintiff. (*See* Bankr. No. 15-5304 Claims Register, Claim No. 8-2.) The initial claim, which had been filed on April 28, 2015, was based on the same loans but was in the amount of $23,658.75. (*See id.*, Claim No. 8-1.)

(Trial Ex. D; Trial Tr. 30:18-24, 32:3-21.)  Neither the Debtor nor the Plaintiff was notified of these transfers when they occurred.[7]  (*See* Trial Tr. 30:14-17.)

Confirmation of the Debtor's plan was continued several times.  On August 13, 2015, the Debtor filed a response to the Plaintiff's objection to confirmation.  (Bankr. No. 13-5304, Docket No. 40; Trial Ex. E.)  In that response, the Debtor argued that the amended plan was not filed in bad faith, that actual delivery of the Vehicle to the Plaintiff was not required for surrender, that the Plaintiff knew that the Debtor could not physically deliver the Vehicle, and that although the Plaintiff could have mitigated its damages by retrieving the car, it failed to do so.

Before the Court ruled on the Plaintiff's objection, the Debtor voluntarily converted her chapter 13 case to a case under chapter 7 on October 21, 2015.  (Bankr. No. 15-5304, Docket No. 50.)  Thereafter, on October 30, 2015, the Plaintiff filed the instant adversary complaint, seeking a determination that the debt owed to the Plaintiff by the Debtor is nondischargeable under § 523(a)(6) and that the Debtor is not entitled to a discharge pursuant to § 727(a)(2).  The Court held an evidentiary hearing on April 5, 2016 and then took the matter under advisement.  After a review of all of the relevant pleadings, exhibits, and testimony elicited at trial, the Court is now ready to rule.

## DISCUSSION

### 1.  Exception to Discharge Under § 523(a)(6)

---

[7] O'Leary testified that the City does not notify creditors when vehicles are destroyed, sold, or otherwise disposed of. (Trial Tr. 30:14-17.)  It is unclear when the Plaintiff learned that the Vehicle had been transferred.  The Debtor, however, knew that the Vehicle had been disposed of when she filed her response to the Plaintiff's objection to confirmation, although she stated in error in that response that the Vehicle had been "crushed" by the City on June 3, 2015.  (Trial Ex. E at 2.)

In Count I of the complaint, the Plaintiff argues that the debt at issue is not dischargeable under § 523(a)(6). As the party seeking to establish an exception to discharge, the Plaintiff bears the burden of proof by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997). Exceptions to discharge must be construed strictly against the Plaintiff and liberally in favor of the Debtor. *See Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011). Additionally, § 523(a) is to be "narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." *Shriners Hosp. for Children v. Bauman (In re Bauman)*, 461 B.R. 34, 44 (Bankr. N.D. Ill. 2011) (internal quotation omitted). Although the burden of going forward with the evidence may occasionally shift, the ultimate burden remains with the Plaintiff. *See Sears, Roebuck & Co. v. Green (In re Green)*, 296 B.R. 173, 179 (Bankr. C.D. Ill. 2003); *see also Penix v. Parra (In re Parra)*, 483 B.R. 752, 774 (Bankr. D.N.M. 2012).

Turning to the statutory provision invoked by the Plaintiff, § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). To demonstrate a claim under § 523(a)(6), the Plaintiff must prove that the Debtor: (1) intended to and caused an injury; (2) acted willfully; and (3) acted maliciously. *See Mut. Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 756 (Bankr. N.D. Ill. 2010); *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 641 (Bankr. N.D. Ill. 2004).

Willfulness requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (quoting *Geiger*). In other

8

words, "willful" means intent to cause injury, not simply the commission of an intentional act that results in injury. *Koplin v. Ginsberg (In re Ginsberg)*, Nos. 08 B 30836, 09 A 188, 2009 WL 4891815, at *5 (Bankr. N.D. Ill. Dec. 16, 2009) (citing *Geiger*); *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 704 (Bankr. N.D. Ill. 2002) (same). Negligently or recklessly inflicted injuries do not fall within the ambit of § 523(a)(6). *Geiger*, 523 U.S. at 64. For purposes of the statutory exception, "willfulness" can be found if either the Debtor subjectively intended to injure the Plaintiff or knew that injury was substantially certain to result from her acts. *See Horsfall*, 738 F.3d at 774 (explaining that a plaintiff can establish "willfulness" by showing that the "debtor's motive was to inflict the injury . . . or the debtor's act was substantially certain to result in injury" (internal quotation omitted)); *see also Gerard v. Gerard*, 780 F.3d 806, 811 (7th Cir. 2015) (quoting *Horsfall*); *Zamora v. Jacobs (In re Jacobs)*, 403 B.R. 565, 581 (Bankr. N.D. Ill. 2009).

As to the malice element, conduct is "malicious" if it is undertaken "in conscious disregard of one's duties or without just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (internal quotation omitted); *see also Horsfall*, 738 F.3d at 774 (quoting *Thirtyacre*); *Fairgrieves*, 426 B.R. at 757; *Vozella v. Basel-Johnson (In re Basel-Johnson)*, 366 B.R. 831, 850 (Bankr. N.D. Ill. 2007). Accordingly, to establish malice under § 523(a)(6), the Plaintiff must prove that the Debtor (1) intentionally committed a wrongful act, (2) which caused injury to the Plaintiff, and (3) which was done without just cause or excuse. *See Bauman*, 461 B.R. at 49; *Basel-Johnson*, 366 B.R. at 850. The Debtor need not have acted with ill will or a specific intent to harm the Plaintiff in order for her conduct to be considered malicious. *See id.*

9

Here, the Plaintiff alleges that after the third impoundment, the Debtor "actively abandoned" the Vehicle, knowing that it would be destroyed, and that her lack of action was willful and malicious in that it caused a total loss to the Plaintiff. (Compl. ¶ 13.) Although the Plaintiff frames its argument in an attempt to fit the "willful and malicious" elements of § 523(a)(6), the actual substance of the Plaintiff's contentions is that the Debtor should have incurred the costs to recover the Vehicle and then physically deliver it to the Plaintiff in order to effectuate surrender but that she failed to do so.

At the outset, the Court notes that the Debtor did not abandon the Vehicle–actively or otherwise. In the context of this matter, abandonment means giving "up all claims to the property, thus pitching it back into the public domain, where it is available for reappropriation."[8] *Cerajeski v. Zoeller*, 735 F.3d 577, 581 (7th Cir. 2013). It is "merely walking away from collateral and permitting any interested parties to satisfy those interests under nonbankrupty law." *In re Ware*, 533 B.R. 701, 709 (Bankr. N.D. Ill. 2015). Abandonment does not effectuate a transfer; it is "a disclaiming or forswearing of rights." *Id.* at 709 n.4. In contrast, "surrender" means a "return and relinquishing of possession or control to the holder of a claim." *Id.* at 709 (internal quotation omitted). Given these definitions, the Debtor here attempted to surrender the Vehicle through her amended plan; she did not abandon the car.

Putting the question of surrender aside for the time being, the Court turns to the actual issue raised in Count I of the complaint: whether the Plaintiff has satisfied the elements of §

---

[8] In the context of bankruptcy, § 554 provides a mechanism by which the bankruptcy trustee can abandon property "that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Property can be abandoned under this provision on the request of a party in interest after notice and a hearing. 11 U.S.C. § 554(b). Based on its allegations, the Plaintiff here is clearly not suggesting that the Debtor abandoned the Vehicle pursuant to § 554.

523(a)(6). Based on the evidence of record, the Court finds that the Plaintiff has not established that the Debtor's actions were either willful or malicious for purposes of the statutory exception and that, thus, the Plaintiff has not met its burden.

As set forth above, the Plaintiff can establish willfulness under § 523(a)(6) by showing that the Debtor subjectively intended to injure the Plaintiff or knew that injury was substantially certain to result from her conduct. *See Gerard*, 780 F.3d at 811; *Horsfall*, 738 F.3d at 774; *Jacobs*, 403 B.R. at 581. As to the latter, the "substantial certainty" test is consistent with the Code's "fresh start" goal in that it "focuses on whether the injury was in fact anticipated by the debtor[.]" *Fid. Fin. Servs. v. Cox (In re Cox)*, 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000) (internal quotation omitted) (discussing the "substantial certainty" test in the context of conversion). The test is also consistent with *Geiger*, which requires a showing that the Debtor intended the consequences of her harmful actions. *Id.* In this matter, there is no evidence demonstrating either that the Debtor subjectively intended to injure the Plaintiff or that she knew that injury was substantially certain to result from her conduct.

First, the record does not establish that the Debtor intended to injure the Plaintiff. Rather, the evidence shows that the Debtor's conduct was motivated solely by her financial situation, with no understanding or consideration of how her actions would affect the Plaintiff. The Debtor was in financial straits: She owed substantial debt to the Plaintiff after the consolidation of her obligations to almost a dozen creditors; she was confronted with thousands of dollars in fees for parking violations in connection with both her Vehicle and a car for which she had unwisely co-signed with a friend; and her Vehicle had been impounded on three different occasions as a result of those parking fees. Although she had been able to borrow funds to retrieve her Vehicle after

11

the first impoundment and the Plaintiff had advanced money for its recovery after the second, the

Debtor was unable to access additional funds to either repair and retrieve the Vehicle or have it

towed after the third impoundment. Faced with those circumstances, the Debtor opted to file an

amended plan under which she provided for surrender of the Vehicle. In doing so, her intent was

to turn the car over to the Plaintiff, not to injure the Plaintiff.

Nor does the record demonstrate that the Debtor knew that injury was substantially

certain to result from her actions. Although she learned that the Vehicle had been taken by the

City shortly after each impoundment, there was no evidence establishing that the Debtor

understood that the Vehicle could be sold or destroyed if she did not retrieve it within a specified

period of time. Further, there was no reason for the Debtor to believe that the Plaintiff would not

recover its collateral–the Vehicle–from the impound lot. The Plaintiff had received the written

notices warning that the City could dispose of the Vehicle within twenty-one days of the notice

date if it was not retrieved. And both Geers and O'Leary testified that they knew that the Vehicle

could be transferred or destroyed if it was not recovered in a timely manner. (Trial Tr. 23:4-9,

27:3-8.) Unlike the Debtor, the Plaintiff was a commercially sophisticated party that was

capable of understanding the consequences of its failure to act.

In sum, the Plaintiff has not proven that the Debtor intended to injure the Plaintiff or

knew that injury was substantially certain to result from her conduct. Thus, the Debtor did not

act "willfully" for purposes of § 523(a)(6).

The Plaintiff has also failed to establish the elements required to satisfy the malice prong

of the statutory exception. Specifically, the Plaintiff has produced no evidence to show that the

Debtor's actions were wrongful and intentional or that her conduct was undertaken in conscious

12

disregard of her duties. As discussed above, the Debtor failed to recover the Vehicle because of her financial predicament and, instead, filed an amended plan providing for its surrender, a decision she saw as her only option with respect to the Vehicle. Prior to the Debtor making that decision, the record shows that she made good-faith efforts to ameliorate her financial situation. She sought help from the Plaintiff to consolidate her debts and lower her interest rate on the Vehicle, she was making regular payments on the car loan after it had been acquired by the Plaintiff (Trial Tr. 15:8-11), she borrowed funds to retrieve the Vehicle after the first impoundment, she tried to get additional monies to repair and recover the Vehicle after the third impoundment (Trial Tr. 51:12-13), and she obtained full-coverage insurance for the Vehicle after filing her chapter 13 petition. In short, the Debtor took steps to save her Vehicle and generally get out of the financial quagmire she was in and was unaware that she was doing anything wrong by trying to ultimately surrender the Vehicle. Accordingly, the Debtor did not act "maliciously." *See Nicholas & Assocs., Inc. v. Morgan (In re Morgan)*, Nos. 09 B 42248, 10 A 00253, 2011 WL 3651327, at *7 (Bankr. N.D. Ill. Aug. 18, 2011) (explaining that the key to satisfying the "maliciousness" prong is "consciousness of wrongdoing" (internal quotation omitted)).

In addition to alleging that the Debtor's actions were willful and malicious, the Plaintiff also contends that "it was entirely possible" that the Court would have ordered the Debtor to pay for the Vehicle because she "could not surrender it." (Compl. ¶ 14.) In support of that argument, the Plaintiff cites to *In re Ware* for the proposition that property incapable "of physical delivery because the debtor has lost possession of it may be surrendered as a legal matter without physical

delivery" if there is no evidence of bad faith.[9] 533 B.R. at 712-13 (explaining, for example, that a court cannot "reasonably allow a debtor to surrender a vehicle . . . which the debtor ha[s] allowed to be impounded due to the debtor's unpaid parking tickets").

Notwithstanding the conclusion in *Ware*, the issue before the Court is not whether the Debtor could have surrendered the Vehicle or what the Court may have ordered if the objection had been decided before the Debtor converted her case. Rather, the question is whether the Plaintiff has established all of the necessary elements to except the debt from discharge under § 523(a)(6). This is the only issue brought by Count I of the complaint. The Court can decide "only the case before it, and can not render advisory opinions disposing of other issues not presented for decision." *In re Chi., Rock Island & Pac. R.R. Co.*, 772 F.2d 299, 303 (7th Cir. 1985); *see also Jiminez v. Rodriguez (In re Rodriguez)*, Nos. 05-19599 (ALG), 06-01119 (ALG), 2008 WL 3200215, at *8 (Bankr. S.D.N.Y. Aug. 5, 2008) (noting that "the Court must decide the issues placed before it"). With its surrender allegations, the Plaintiff attempts to jam a square peg–the facts supporting an objection to confirmation–into a round hole–the elements required for nondischargeability under § 523(a)(6). Because those facts do not fit–and because the surrender issue is not before the Court–the Plaintiff's argument is inapposite.

Finally, the Plaintiff contends that the debt at issue is nondischargeable under § 523(a)(6) because the Debtor had a potential cause of action against the City upon which she did not act. Indeed, the City impounded the Vehicle in April 2015, while the Debtor's chapter 13 case was pending and, thus, while the Debtor was protected by the automatic stay. At no time, before or

---

[9] In connection with its objection to confirmation, the Plaintiff cited to *Ware* in its reply and attached as an exhibit to that reply a copy of the *Ware* decision. (*See* Bankr. No. 15-5304, Docket No. 47.)

14

after that impoundment, did the City file a motion for relief from the automatic stay. (*See* Trial

Tr. 31:21-24.) And at no time did the Debtor pursue sanctions against the City for allegedly

violating the stay.

In the Debtor's response to the Plaintiff's objection to confirmation, however, the

Debtor's attorney in the bankruptcy case explained that after the April 2015 impoundment, she

contacted the City and learned that the Vehicle had been impounded because pre-petition parking

tickets had not been "properly coded." (Trial Ex. E at 1.) According to the response, the tickets

were subsequently properly coded, and a release was issued. (*Id.* at 1-2.) When the Debtor

attempted to retrieve the Vehicle from the impound lot, however, she discovered that it was

inoperable and could not be moved without a tow, which the Debtor could not afford to pay for.

(*Id.* at 2.)

According to the evidence of record, the Plaintiff was aware of the Debtor's intention to

surrender the Vehicle for more than five weeks before title to the car was transferred by the City

for the first time. The Debtor filed a modified chapter 13 plan, clearly indicating her intent to

surrender the Vehicle in full satisfaction of the Plaintiff's claim, on May 4, 2015. She credibly

testified that both she and her attorney communicated that intent to the Plaintiff, informed the

Plaintiff that the Vehicle was inoperable, and told the Plaintiff that the Debtor did not have

money to retrieve the Vehicle and would not be recovering it from the impound lot. (Trial Tr.

73:1-74:5.) Thus, the Plaintiff knew in early May 2015, when the modified plan was filed, that

the Debtor intended to surrender the Vehicle. The Plaintiff also knew that the Debtor did not

have funds to recover the Vehicle and that she, indeed, would not be retrieving the car from the

City. Despite this knowledge, and despite the fact that the Plaintiff was notified by the City in

15

writing that the Vehicle could be sold or otherwise disposed of if it was not claimed within twenty-one days of the date of the notice, the Plaintiff did not recover the Vehicle, thereby failing to mitigate the total loss that resulted due to the transfer that ultimately took place on June 12, 2015. *See R.R. Donnelley & Sons Co. v. Vanguard Transp. Sys., Inc.,* 641 F. Supp. 2d 707, 717 (N. D. Ill. 2009) (discussing the "contractual duty" to mitigate damages); *City & Suburban Distribs.-Ill., Inc. v. Stroh Brewery Co.,* No. 87 C 1409, 1996 WL 563534, at *4 (N.D. Ill. Oct. 1, 1996) (same).

In short, the Court finds that the Plaintiff has not met its burden to demonstrate the requisite elements to prove a claim under § 523(a)(6). Accordingly, under the specific facts of this case, the Court holds that the debt at issue is not excepted from discharge under that statutory exception.

Notwithstanding the result here, the Court is mindful of the substantial services rendered by the Plaintiff to the Debtor. The Plaintiff's frustration with both the Debtor and the ultimate transfer of the Vehicle is understandable given the fact that the Plaintiff stood ready to help the Debtor recover the car after the first impoundment and advanced the funds needed to retrieve the Vehicle after the second one. As discussed above, however, despite the fact that the Plaintiff acted with good faith throughout these proceedings, the Plaintiff has simply failed to satisfy the elements of § 523(a)(6). To the extent that the Plaintiff believes that it has grounds for a claim against the City for impounding the Vehicle in April 2015 in purported violation of the automatic stay, the Plaintiff is free to pursue the City in the appropriate forum.

## 2. Denial of Discharge Under § 727(a)(2)

In Count II of the complaint, the Plaintiff argues that the Debtor is not entitled to a

discharge pursuant to § 727(a)(2).[10]  Obtaining a discharge is the primary aim of the "fresh start"

that bankruptcy is designed to give debtors.  *Gasunas v. Yotis (In re Yotis)*, 548 B.R. 485, 494-95

(Bankr. N.D. Ill. 2016).  Accordingly, denial of discharge is a "drastic" remedy reserved for only

the truly "pernicious" debtor.  *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 359

(Bankr. N.D. Ill. 2002), *aff'd*, 2003 WL 403138 (N.D. Ill. Feb. 20, 2003).  For that reason, the

grounds for denial of discharge listed in § 727 are construed strictly against a creditor and

liberally in favor of the debtor.  *Sullivan v. Ratz*, No. 12 C 5819, 2016 WL 379729, at *9 (N.D.

Ill. Jan. 27, 2016).  A creditor seeking an order denying a debtor a discharge bears the burden of

proving each of the elements of the applicable claim by a preponderance of the evidence.

*Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966-67 (7th Cir. 1999); *Muhammad v. Reed (In re*

*Reed)*, 542 B.R. 808, 823 (Bankr. N.D. Ill. 2015).

Turning to the statutory provision invoked by the Plaintiff, § 727(a)(2) provides that a

debtor's discharge may be denied when the debtor, "with intent to hinder, delay, or defraud a

creditor . . . , has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be

transferred, removed, destroyed, mutilated, or concealed" either "property of the debtor, within

one year before the date of the filing of the petition" or "property of the estate, after the date of

---

[10] In the first paragraph of the complaint, the Plaintiff invokes both subsections (a)(2) and (a)(4)(A) of §
727. In Count II, however, the Plaintiff cites to § 727(a)(4)(A) only in passing (noting that "[f]ailure to make such
disclosures is a false account and grounds to deny discharge pursuant to" § 727(a)(4)(A) but not identifying which
"disclosures" are at issue). Neither the complaint nor the exhibits and testimony received into evidence address the
elements required under that statutory provisions. Thus, the Court assumes that the minimal references to §
727(a)(4)(A) are typographical errors, possibly remnants from an old complaint that Plaintiff's counsel failed to take
the time to update when filing this adversary. Accordingly, the Court addresses only the Plaintiff's contentions under
§ 727(a)(2).

the filing of the petition[.]"[11] 11 U.S.C. § 727(a)(2). The purpose of the statutory provision is to prevent the discharge of a debtor who tries to avoid paying her creditors by concealing or otherwise disposing of her assets. *Blomberg v. Riley (In re Riley)*, 351 B.R. 662, 670 (Bankr. E.D. Wis. 2006). To prevail under § 727(a)(2), a plaintiff must establish two elements: "an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002) (internal quotation omitted), *aff'd on other grounds sub nom. Kontrick v. Ryan*, 540 U.S. 443 (2004); *see also Barber v. Herold (In re Herold)*, Nos. 07-81575, 07-8139, 2008 WL 4855646, at *3 (Bankr. C.D. Ill. Nov. 10, 2008) (citing *Kontrick*).

The Code defines "transfer," in relevant part, as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . property . . . or . . . an interest in property." 11 U.S.C. § 101(54)(D). Concealment, for purposes of the exception, consists of "failing or refusing to divulge information to which creditors [are] entitled." *Neary v. Mosher (In re Mosher)*, 417 B.R. 772, 784 (Bankr. N.D. Ill. 2009) (internal quotation omitted).

As for intent, § 727(a)(2) requires proof of actual intent. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). Because a debtor is unlikely to admit her fraudulent intent, however, a finding of actual intent may be inferred from the surrounding circumstances. *Id.* at 790-91; *In re Snyder*, 152 F.3d 596, 601 (7th Cir. 1998); *In re Krehl*, 86 F.3d 737, 743 (7th Cir.

---

[11] In the complaint, the Plaintiff cites to § 727(a)(2)(A), which addresses property of the debtor transferred or destroyed within one year before the filing date. (Compl. ¶ 16.) In contrast, in its motion for default judgment, the Plaintiff cites to § 727(a)(2)(B), which addresses property of the estate transferred or destroyed after the filing date. (Mot. for Default J. ¶ 11.) Although the Plaintiff's allegations under § 727(a)(2) focus primarily on the Debtor's post-petition conduct with respect to the third impoundment, the Debtor's entire pattern of conduct is relevant to the inquiry at bar. Additionally, the elements to be established under both of the statutory subsections are the same. Thus, the Plaintiff's inconsistent citations are of no moment.

1996).  Certain factors, or "badges" of fraud, may warrant the inference.  *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 744 (Bankr. N.D. Ill. 2004).  These include the debtor's retention of possession, benefit, or use of property; the debtor's financial condition; a lack of consideration for the transfer; a familial or close relationship between the parties; and the chronology of the events in question.  *McWilliams*, 284 F.3d at 791; *Olbur*, 314 B.R. at 744.  Fraudulent intent may also be established by demonstrating that the debtor acted with "reckless disregard," or "the state of mind present when a debtor does not care about the truth or falsity" of a statement or situation.  *Neary v. Stamat (In re Stamat)*, 395 B.R. 59, 71 (Bankr. N.D. Ill. 2008), *aff'd*, 2009 WL 2916834 (N.D. Ill. Sept. 2, 2009), *aff'd*, 635 F.3d 974 (7th Cir. 2011).  In deciding whether a debtor has acted with intent to defraud for purposes of § 727, the Court should consider the Debtor's "whole pattern of conduct."  *Richardson v. Clarke (In re Clarke)*, 332 B.R. 865, 870 (Bankr. C.D. Ill. 2005) (internal quotation omitted).

In this matter, the Plaintiff alleges that the Debtor caused the Vehicle to be destroyed with the intent to hinder, delay, and defraud the Plaintiff by allowing the Vehicle to be crushed instead of getting it towed from the impound lot.[12]  (Compl. ¶¶ 16, 17, 19.)  The Plaintiff suggests that the Debtor could have afforded to tow the Vehicle because she "is an adult with no dependents [or] other secured creditors" and that her "refus[al]" to do so was "unconscionable."  (*Id.* at ¶ 19.)

Turning to the elements of § 727(a)(2), the facts sufficiently establish that there was a transfer of property for purposes of the statutory provision.  Because neither the Plaintiff nor the Debtor retrieved the Vehicle in a timely manner after the third impoundment, the title to the

---

[12] The complaint was clearly filed before the Plaintiff discovered that the title to the Vehicle had been transferred.  Prior to learning about the transfer, both the Plaintiff and the Debtor apparently believed that the Vehicle had been destroyed.

Vehicle was transferred from the Debtor's name to a company located in Illinois, and later two more times to other entities. The Vehicle is currently titled to a corporation in Wisconsin.

The evidence does not demonstrate, however, that the Debtor intended to hinder, delay, or defraud the Plaintiff by failing to tow the Vehicle from the impound lot. Instead, as discussed at length above, the Debtor did not recover the Vehicle from the City after the third impoundment because she did not have the money needed either to repair and retrieve the car or to get it towed. Notwithstanding the fact that the Debtor is an adult without dependents or other secured creditors, the facts establishing her financial difficulties are undisputed, and the Court finds the Debtor's testimony about her financial straits credible. Additionally, despite the Plaintiff's allegations, the Debtor did not simply abandon the Vehicle after the third impoundment. Rather, her attorney contacted the City, seeking release of the Vehicle. When the Debtor discovered that the Vehicle was inoperable and would require a tow, she filed a modified plan surrendering the car to the Plaintiff, as she could not afford the tow necessary to obtain possession of the Vehicle.

Based on the Debtor's whole pattern of conduct, there is simply no evidence that she intended to hinder, delay, or defraud the Plaintiff. Accordingly, the Plaintiff has failed to satisfy its burden of demonstrating intent for purposes of § 727(a)(2), and the Debtor's discharge will not be denied under that statutory provision.

## CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiff has failed to meet its burden to establish the elements required under §§ 523(a)(6) and 727(a)(2). As such, the debt at issue will not be excepted from discharge, and the Debtor's discharge will not be denied. A separate order will be entered consistent with this Memorandum Opinion.

20

Dated: **June 20, 2016**                    **ENTERED:**

Janet S. Baer
United States Bankruptcy Judge